**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**GREGORY PAPPAS,**

   **Petitioner,**

**v.**          **Case No.  3:14cv564-LC/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,[1]**

   **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

  On October 20, 2014, Petitioner, Gregory Pappas, a prisoner in the

custody of the Florida Department of Corrections, proceeding through

counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  ECF No. 1.  Pursuant to orders of this Court, Petitioner filed a

Second Amended Petition on December 18, 2014, ECF No. 8, and on

March 10, 2015, a third amended petition with memorandum.  ECF Nos.

12, 13, 14.  Respondent filed an answer with exhibits on December 7,

2015.  ECF Nos. 25, 27.  Petitioner filed a reply with exhibits on January 7,

2016.  ECF No. 29.

---

[1] The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Timothy H. Cannon as Respondent.  Julie L. Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Amended Information on July 5, 2007, in the circuit court in and for Escambia County, Florida, with Count 1, shooting into an occupied vehicle on or about February 28, 2007, in violation of section 790.19, Florida Statutes; and Count 2, aggravated assault by threat with a deadly weapon, without intent to kill, by firing a flare gun at an occupied vehicle, and at the time possessing a firearm, a flare gun, in violation of sections 784.021(1)(a) and 775.087(2), Florida Statutes.  Ex. A at 3.[2]

---

[2] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through FF submitted in conjunction with Respondent's answer, ECF No. 25, unless otherwise indicated.  *See* ECF No. 27-1 through 27-11,

Jury trial was held on May 27-28, 2008, at which Petitioner did not testify.  Ex. D, E.  The jury found Petitioner guilty as charged, with a special finding that he used, carried, or actually possessed a firearm and that he discharged it during the commission of the aggravated assault.  Ex. C at 447.  Judgment and sentence were entered on May 28, 2008, and Petitioner was sentenced on Count 2 to a minimum mandatory term of twenty years in prison due to the finding that Petitioner used, carried or actually possessed a firearm and discharged a firearm.  Petitioner was sentenced to a concurrent term of five years in prison for Count 1, with credit for time served of two days.  Ex. C at 448-56.

Petitioner appealed to the state First District Court of Appeal, which affirmed per curiam without opinion on August 20, 2009.[3]  Ex. F, I.  *See* Pappas v. State, 14 So. 3d 1008 (Fla. 1st DCA 2009) (table).  Petitioner's motion to correct sentencing error filed on April 6, 2010, was dismissed as untimely and the appeal from that order was voluntarily dismissed on July

---

[3] The issues raised on direct appeal were: (1) The trial court erred in denying the motion to dismiss, the motion for judgment of acquittal (JOA), and the motion to arrest judgment because dual convictions, dual judgments, and duel sentences violate a proper construction of section 775.021, Florida Statutes, and constitute double jeopardy; (2) The trial court erred in denying the motion for JOA because evidence was insufficient to prove use of a firearm due to use of an improper definition; and (3) The trial court erred in denying Petitioner's motion for mistrial after the State referred in closing argument to his invocation of his right to remain silent.  Ex. F.

23, 2010.  Ex. K.  Petitioner then filed, on July 14, 2010, a petition for writ of

habeas corpus in the state First District Court of Appeal alleging ineffective

assistance of appellate counsel.[4]  Ex. L.  After response from the State and

reply by Petitioner, the petition alleging ineffective assistance of appellate

counsel was denied on the merits.  Ex. Q.  *See* Pappas v. State, 51 So. 3d

489 (Fla. 1st DCA 2010) (mem).

Petitioner filed a motion for post-conviction relief in the trial court

pursuant to Florida Rule of Criminal Procedure 3.850 on January 10,

2011.[5]  Ex. T at 25-56.  After ordering the State to respond on several

---

[4] The issues raised as to appellate counsel were failure to argue: (1) Fundamental error in jury instruction; (2) Trial court error in excluding exculpatory evidence; (3) Trial court error in allowing testimony of unqualified witnesses to testify as experts; (4) Trial court error in denial of motion for judgment of acquittal; (5) Trial court denial of mistrial after improper bolstering; (6) Trial court error in denying motion to find sections 790.001(6) and 775.087(2), Florida Statutes unconstitutional; (7) Trial court error in allowing a hypothetical situation into evidence not based on fact; and (8) Trial court error in denying motion to produce evidence or dismiss.  Ex. L.

[5] The claims raised in the Rule 3.850 motion were: (1) Ineffective assistance of counsel (IAC) in failing to request a jury instruction on "firearm" that mirrored the definitions of "firearm" and "destructive device" in section 790.001, Fla. Stat.; (2) IAC in failing to move to suppress evidence illegally seized from Petitioner's truck; (3) IAC in failing to move to suppress statements to law enforcement taken in violation of Miranda; (4) IAC in failing to present Petitioner's testimony and for misadvising Petitioner about impeachment if he testified; (5) IAC in failing to move for JOA on ground that the victim did not see any object expelled from the flare gun; (6) IAC in failing to object to discovery violation; (7) IAC in failing to object and move for mistrial based on Giglio violation; (8) IAC in waiving Petitioner's presence during hearing of post-trial motions; (9) IAC in failing to object to prosecutorial misconduct; and (10) cumulative error.  Ex. T at 25-56.  Petitioner filed a motion to add claim (11) alleging that counsel was ineffective in failing to request a jury instruction requiring a finding that Petitioner had knowledge that the device was a deadly weapon, firearm, or destructive device, Ex. T at 61-65, and claim (12) alleging IAC in conceding defendant's guilt during trial.  Ex. T at 25-29; 71-76.

claims, the trial court granted an evidentiary hearing on claims (2), (3), (4) and (12).  The hearing was held on March 12, 2012, at which both trial counsel and Petitioner testified.  Ex. T at 95-181.  The trial court denied the post-conviction claims on August 7, 2012.  Ex. U at 225-396.  Petitioner appealed to the state First District Court of Appeal, which affirmed per curiam without opinion on June 17, 2014.  Ex. CC.  Rehearing was denied on August 11, 2014, and the mandate was issued on August 27, 2014.  Ex. FF.  *See* Pappas v. State, 145 So. 3d 836 (Fla. 1st DCA 2014) (table).

Petitioner filed his third amended petition for writ of habeas corpus  in this Court pursuant to 28 U.S.C. § 2254 raising the following grounds for relief:

> (1) Petitioner was denied effective assistance of trial counsel when his attorney failed to move to suppress evidence from a search of Petitioner's truck after police illegally entered Petitioner's garage to feel the truck's hood.  ECF No. 13 at 5.

> (2)  Petitioner was denied effective assistance of trial counsel when counsel failed to request a jury instruction mirroring the statutory definitions of "firearm" and "destructive device."  ECF No. 13 at 7.

> (3)  Petitioner was denied effective assistance of appellate counsel when his attorney failed to raise the trial court's denial of a "deadly weapon" alternative to a "firearm" on the aggravated assault verdict form, denying due process and the possibility of a jury pardon, and prejudicing Petitioner because the appellate court would have reversed based on the confusing jury verdict form omitting a lesser included offense. ECF No. 13 at 9; ECF No. 14 at 13.

(4)  Petitioner was denied effective assistance of appellate counsel when counsel failed to raise the trial court's refusal to allow Petitioner's expert to state an opinion that a flare is not an "explosive" or "firearm" under Federal law.  ECF No. 13 at 10; ECF No. 14 at 16.

(5) Trial counsel rendered ineffective assistance by failing to move to suppress the contaminated or destroyed exculpatory evidence consisting of a flare gun that Officer Fortenberry discharged before placing into evidence.  ECF No. 13 at 12; ECF No. 14 at 17.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

 "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971).

 In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

McCleskey v. Zant, 499 U.S. 467, 497 (1991) (citing Murray v. Carrier, 477

U.S. 478, 488 (1986)).  A federal court may grant a habeas petition on a

procedurally defaulted claim without a showing of cause or prejudice if

necessary to correct a fundamental miscarriage of justice.  Henderson v.

Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the

miscarriage of justice exception, the Petitioner must show that "a

constitutional violation has probably resulted in the conviction of one who is

actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting

Carrier, 477 U.S. at 496).

     This Court's review "is limited to the record that was before the state

court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  Titlow, 134 S. Ct. at 13.  The

reasonableness of counsel's conduct must be viewed as of the time of

counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing

Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1: Failure to Move to Suppress Evidence from Truck

Petitioner contends he was denied effective assistance of trial counsel when his attorney failed to move to suppress evidence seized from his truck after police entered Petitioner's garage to feel the truck's hood. ECF No. 13 at 5. This claim was raised in his Rule 3.850 motion and denied by the post-conviction court. Ex. U at 228.

The police arrived at Petitioner's home after a report that he had fired a flare gun during an apparent road rage incident. Law enforcement received a 911 call from the victim Susan Elizabeth Langston reporting that

when she turned on to Bayou Boulevard from Lloyd Street in Escambia County, she noticed a vehicle directly behind her flashing its lights.  Ex. A at 4 (police report).  She reported that when the vehicle passed her on the left, the driver, later identified as Petitioner, gave her a rude hand signal, which she returned.  Langston reported that Petitioner pulled his vehicle to the shoulder and as she drove past, he stuck his arm out the window and was holding what appeared to be an orange flare gun, which was in the shape of an actual gun.  The victim reported that Petitioner fired the flare gun and a flare was projected over her car in which her seven-year-old daughter was a passenger.

Langston managed to obtain the vehicle tag number, and law enforcement was dispatched to Petitioner's residence where the vehicle with that tag number was parked in the open garage.  The arrest report stated that the vehicle, which matched the description and tag number given by the victim, "had a warm hood."  Ex. A at 4.  Petitioner was arrested and, the report indicates, "[a] search of Pappas' vehicle, incident to arrest, revealed an orange flare gun located in an open compartment on the driver's side door. . . .  The flare gun was seized and turned in as evidence."  Ex. A at 5.

The post-conviction court granted an evidentiary hearing on this claim that trial counsel was ineffective for failing to move to suppress the search of Petitioner's vehicle and the seizure of the flare gun.  At the hearing, held March 12, 2012, both Petitioner and his trial counsel testified.  The court also reviewed transcripts of the testimony of two officers in the case and the trial transcript.  Ex. T at 95-98.  Petitioner testified that when the first officer arrived at his residence, he met him outside in front of the open garage.  Petitioner's truck was parked inside.  Petitioner testified that he was never asked for permission and never gave officers permission to enter his home, his curtilage, or his garage.  Ex. T at 104-05.

Petitioner testified that a second officer, Officer Fortenberry, drove up in his driveway and exited her vehicle, screaming at him that "the lady had a baby in the car."  Ex. T at 107.  Petitioner said that Officer Fortenberry then entered the garage without asking permission and touched the hood of the truck, which was facing forward inside the garage. Ex. T at 107-110. Petitioner said he refused to answer any questions posed by the officers and he asked for a lawyer, but they continued to ask him questions.  Ex. T at 112-13.  He testified that he requested they not go into the truck, and once they did, he was arrested and the flare gun was seized.  Ex. T at 114.

At the Rule 3.850 hearing, Petitioner testified that his trial counsel talked to him before trial and advised him about trial strategy.  Ex. T at 116. According to Petitioner, he told his trial counsel about how the officers entered the garage without his consent and went into his truck to seize a flare gun, but that his attorney never discussed the possibility of suppression of the evidence with him.  Ex. T at 128.

Petitioner's trial counsel testified at the evidentiary hearing that he and Petitioner discussed the circumstances of the officers entering his garage and that he explored the possibility of moving to suppress.  Ex. T at 147.  He said he deposed the officers with that possibility in mind and he provided the copies of the deposition transcripts to Petitioner to review.  He recalled that it was "after the flare had been found from - - based on the consent, they got the flare."  Ex. T at 148.  He testified that Petitioner never told him he did not give permission for officers to go into the truck and that based on his conversations with Petitioner, "it was clear to me there was no motion to suppress available."  Ex. T at 148.

Trial counsel was cross-examined on the issue of whether, when he deposed Officer Fortenberry, and she said she went into the garage to check the truck, counsel should have seen that a motion to suppress was necessary.  Ex. T at 166.  Counsel did not respond directly but testified that

he did discuss the possibility of a suppression motion with Petitioner.

Counsel explained: "There was more than a thorough discussion with my

client.  We talked about it because it was hard to make him understand

things sometimes, so I went over it with him numerous times."  Ex. T at

173.  Counsel also testified that he recalled the depositions indicating that

entry into the garage and touching the hood of the car came after Petitioner

gave permission to Officer Briarton to search the truck.  Ex. T at 170.

However, Officer Fortenberry testified in her deposition, which the post-

conviction court reviewed, that after she arrived at Petitioner's residence,

he was read his <u>Miranda</u> rights by Officer Briarton.[6]  Ex. U (Attachment 6 –

deposition of Fortenberry at transcript page 7).  She said she then walked

into the garage and felt the hood of the truck, which was warm.  Ex. U

(Attachment 6 – deposition of Fortenberry at transcript page 8).  She exited

the garage and asked Petitioner if he would mind if she looked look in the

truck, to which he responded "[N]o, it's in the door, the driver's side door."

*Id.* at page 11.  Fortenberry further testified in deposition that after she

retrieved the flare gun from the truck Petitioner said he did not want the

---

[6] The post-conviction court noted that the depositions were never placed into evidence, but were reviewed by the court only to provide "context to Defendant's motions, not as a part of the record used to deny Defendant's claims."  Ex. U at 230 n.11.  Trial counsel did take the depositions and did review them prior to trial, and would therefore have been familiar with the officers' testimony concerning consent.  Ex. T at 148.

officers in his truck.  *Id.*  Officer Briarton also testified in his deposition, which was reviewed by the post-conviction court, that the truck was searched only after Petitioner consented.  Ex. U (Attachment 6 – deposition of Briarton at page 12).  At the jury trial, Officer Briarton testified that Petitioner gave the officers consent to search the truck.  Ex. D at 151.  Similarly, Officer Fortenberry testified at trial that she asked Petitioner for consent to search the truck and he did consent.  Ex. D at 155

Petitioner's claim that trial counsel should have moved to suppress the evidence of the flare gun because any consent to search the truck was tainted by Officer Fortenberry's warrantless entry into the garage to feel the truck hood was denied by the post-conviction court.  Ex. U at 228-33.  The court found trial counsel's testimony to be credible and Petitioner's testimony to be less than credible.  Ex. U at 229.  The court also found that before consent to search was given, Officer Fortenberry briefly entered the open garage and felt the truck hood.  Ex. U at 230.  The court stated in the order:

> Assuming that it was an illegal search when Officer Fortenberry entered the garage and touched the hood of Defendant's truck, the Court does not find Defendant's subsequent consent to be tainted.  Even if it is considered "presumptively tainted," and even if the Court could find some merit in a motion to suppress, the Court cannot find that counsel was deficient. . . .

>       An attorney's strategic decision does not "constitute
> ineffective assistance if alternate courses of action have been
> considered and rejected and counsel's decision was
> reasonable under the norms of professional conduct.". . .
>
>       Mr. Thomas [trial counsel] testified at the evidentiary
> hearing that the first thing he explored in this case was a motion
> to suppress, and that he asked questions specifically in
> depositions that would help him to determine if such a motion
> would be meritorious.  Mr. Thomas reviewed the specific facts
> with Defendant at length, researched legal authority,
> "determined that a motion to suppress would be fruitless, and
> *decided that the best trial strategy* would be to "attack the
> constitutionality of the way the State was using the statute to
> include a flare gun as a firearm."  The Court finds Mr. Thomas's
> trial strategy to be well within the norms of reasonable
> professional conduct. . . .
>
>       Finally, and importantly, the Court would note that even if
> the deficiency prong of the <u>Strickland</u> test were presumed to be
> satisfied, Defendant cannot demonstrate that he was prejudiced
> by any inaction by counsel.  Even if the flare gun had been
> successfully suppressed at trial, it is not likely that the outcome
> of the proceedings would have been different.  The victim
> testified at trial that Defendant shot a flare gun at her.  She
> testified further that she is familiar with flare guns.  She also
> testified that she saw Defendant's face during the incident and
> she identified Defendant in the courtroom.  After the incident,
> Defendant drove away and she recorded his license tag
> number. . . .

Ex. U at 231-232 (citations and footnotes omitted).  The court also noted

that counsel filed voluminous pretrial motions in pursuance of his strategy

to challenge the constitutionality of the statute.  Ex. U at 232, n.15.  Denial

of this claim was affirmed by the state First District Court of Appeal.  Ex.

CC.  These state court adjudications are entitled to AEDPA deference.

In light of the testimony presented at the evidentiary hearing concerning counsel's trial strategy and investigation into the possibility of a successful motion to suppress, and in light of the trial testimony, the post-conviction court's credibility determinations and conclusions are not objectively unreasonable. Under § 2254(d), federal courts have "no license to determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "[D]etermining the credibility of witnesses is the province and function of the state courts, not the federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Credibility and demeanor of a witness are considered to be a questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.* at 845.

Neither deficiency nor prejudice under the standards required by Strickland have been established. The state courts' adjudications have not been shown to be unreasonable in light of the record in this case. As noted earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher

threshold.' " <u>Mirzayance</u>, 556 U.S. at 123 (quoting <u>Schriro</u>, 550 U.S. at 473).  As the post-conviction court found, even if the flare gun had been suppressed, Petitioner has not demonstrated as required by <u>Strickland</u> that but for counsel's alleged error, there is a reasonable probability that the result of the trial would have been different.  The victims' testimony identifying Petitioner and the truck he was driving, and her description of the device he fired over her car as an orange, pistol-shaped flare gun, would have been sufficient for the jury to find Petitioner guilty.

Petitioner has failed to demonstrate that the state courts' adjudication of this claim resulted in a decision that is contrary to, or involving an unreasonable application of, <u>Strickland</u> or any other federal law, as determined by the Supreme Court.  Nor has Petitioner shown that the adjudication rests on an unreasonable determination of fact in light of the state court record.  Habeas relief on Ground 1 should be denied.

## **Ground 2: Jury Instructions**

Petitioner contends in Ground 2 that he was denied effective assistance of trial counsel when counsel failed to request a jury instruction mirroring the definitions of "firearm" and "destructive device" under section 775.087(2), Florida Statutes, and by reference therein, section 790.001, Florida Statutes.  ECF No. 13 at 7.  This claim was raised in Petitioner's

post-conviction motion and denied by the trial court.  Ex. U at 227.  The

state First District Court of Appeal affirmed.  Ex. CC.

Count 2 of the Amended Information alleged that Petitioner

committed an aggravated assault and in the course of that offense, actually

possessed and discharged a firearm, to-wit: a flare gun, in violation of

sections 784.021(1)(a) and 775.087(2), Florida Statutes.  Ex. A at 3.

Petitioner contends that prior to the start of the jury trial, the court removed

the definition of "destructive device" from the jury instructions as

inapplicable, and shortened the definition of "firearm," all without objection

by Petitioner's counsel.  ECF No. 11-2 at 10.  Petitioner argues that the

definition of "destructive device" is an "exculpatory definition" because a

flare gun does not meet the statutory definition of a "destructive device,"

and failure to have the jury instructed on it was a violation of due process.

*Id.*  He further contends that the shorter version of the definition of "firearm"

favored the State.  *Id.* at 10.

The Respondent contends that the definition of "destructive device"

was not necessary because it was irrelevant to the charges, which alleged

possession and discharge of a "firearm."  ECF No. 25 at 31.  Respondent

also contends that the revised version of the statutory definition of "firearm"

given to the jury was simply a more concise version of the definition and only omitted irrelevant parts of that statutory definition. *Id.*

The post-conviction court denied the claim, finding that the instruction given to the jury—"A firearm is legally defined as any weapon which will, is designed to, or may be readily converted to: one, expel a projectile; two, by action of an explosive"—was a proper instruction based on the charges filed and the facts of the case. Ex. U at 227. At trial, defense counsel agreed with this instruction. Ex. D at 63.

The post-conviction court characterized the instruction given as a shorter version of the statutory definition which "omitted the inapplicable provisions." *Id.* The court concluded that it would not have made any difference in the outcome of the trial if a longer statutory definition of "firearm" had been given. The court also agreed that under the statutory definition of "destructive device," a flare gun would not have qualified as such, but that the jury was only tasked with determining if Petitioner carried a "firearm." Ex. U at 228.

At trial, the court instructed the jury on the charge of aggravated assault, and in so doing stated in pertinent part:

> If you find that the defendant committed aggravated assault and you also find that during the commission of the crime, the defendant used a firearm, you should find him guilty of aggravated assault with a firearm.

> A firearm is legally defined as any weapon which will, is designed to, or may be readily converted to, one, expel a projectile; two, by action of an explosive.
>
> If you find only that the defendant committed aggravated assault but did not possess a firearm, then you should find him guilty only of aggravated assault.

Ex. E at 380-381.  The full definition of "firearm" set forth in section

790.001(6), Florida Statutes (2008), is as follows:

> (6)  "Firearm" means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun.  The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime.

§ 790.001(6), Fla. Stat. (2008).  Although the statutory definition of "firearm"

includes "any destructive device," it does so in the disjunctive.  Terms in a

statute that are connected by a disjunctive are generally given separate

meanings.  Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979); *see also*

Clines v. State, 912 So. 2d 550, 556 (Fla. 2005).  Thus, charging Petitioner

with possession and use of a firearm does not necessarily implicate every

other disjunctive portion of the statutory definition and thus does not require

the jury be instructed as to all those other alternatives.

Section 790.001(4) defines "destructive device" as follows:

> (4) "Destructive device" means any bomb, grenade, mine, rocket, missile, pipebomb, or similar device containing an explosive, incendiary, or poison gas and includes any frangible

container filled with an explosive incendiary, explosive gas, or
expanding gas, which is designed or so constructed as to
explode by such filler and is capable of causing bodily harm or
property damage; any combination of parts either designed or
intended for use in converting any devices into a destructive
device and from which a destructive device may be readily
assembled; any device declared a destructive device by the
Bureau of Alcohol, Tobacco, and Firearms; any type of weapon
which will, is designed to, or may be readily converted to expel
a projectile by the action of any explosive and which has a
barrel with a bore of one-half inch or more in diameter; and
ammunition for such destructive devices, but not including
shotgun shells or any other ammunition designed for use in a
firearm other than a destructive device. . . .

§ 790.001(4), Fla. Stat. (2008).  That statute goes on to exclude from the

definition a device not designed or redesigned, used, or intended for use as

a weapon; a device which is redesigned so that it may be used solely as a

signaling, line-throwing, safety, or other similar device; any shotgun other

than short-barreled; or any nonautomatic rifle other than a short-barreled

rifle generally suitable for hunting big game.  § 790.001(4)(a)-(d), Fla. Stat.

(2008).

There was no allegation in the case pertaining to Petitioner

possessing or using a "destructive device" in the commission of the

offense.  Thus, trial counsel was not deficient in failing to object to

removing the definition of destructive device from the instructions given the

jury.  Because Petitioner was charged with possession and use of a

firearm, which is defined in the disjunctive in the statute as "any weapon

(including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive," it was not unreasonable for the post-conviction court to find that counsel was not deficient in failing to request an instruction also defining "destructive device."  Even if the statutory definition for "destructive device" had been given, the jury would also have been instructed on the definition of "firearm."  Therefore, even if the jury had determined that the flare gun was not a destructive device, such a determination would not mean the jury would be precluded from finding that the flare gun met the definition of a "firearm," as Petitioner was charged with possessing and firing.

The post-conviction court also reasonably determined that trial counsel was not deficient in failing to object to the shortening of the definition of "firearm" to only that disjunctive portion that essentially described a device that expels a projectile by way of an explosive.  The standard jury instruction for aggravation of a felony by carrying or using a firearm does recite the entire disjunctive statutory definition of "firearm" as set forth in section 790.001(6).  *See* Fla. Std. Jury Instr. (Crim.) 3.3(a).  However, those parts of the definition referring to "the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive

device; or any machine gun" were not pertinent to the charge in the case or the evidence presented at trial.

The Florida Supreme Court has not mandated that any time the definition of "firearm" is required to be given to a jury, the entire statutory definition must be read.  The opposite is true.  For example, in the standard jury instruction for the offense of discharging a firearm in public or on residential property, the instruction defining "firearm" for purposes of that charge includes the same shortened version of the definition that was given in this case.  *See* Fla. Std. Jury Instr. (Crim.) 10.6.  The initial determination of the applicable substantive law in each case should be made by the trial judge and the judge is charged with correctly instructing the jury in each case.  Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So. 2d 594, 598 (Fla. 1981).  That is what occurred in Petitioner's trial.

At trial, the State presented a firearm and tool mark expert who testified that he had examined and test fired the flare gun found in Petitioner's truck.  Ex. D at 165.  He testified that the flare gun operated with a hammer which is cocked and a trigger which is pulled, causing the firing pin to travel forward to strike the primer of the cartridge.  Ex. D at 169-70.  The flare gun also has a breech and a barrel.  Ex. D at 170.  He

testified that these same features appear on a gun.  Ex. D163-64; 171.  He

testified that the striking of the pin ignites the process of burning powder

which expels whatever is in the barrel of the flare gun.  *Id.* at 172.  When he

test fired the flare gun, he first loaded it with a cartridge in the barrel, pulled

the hammer back, and then pulled the trigger.  Ex. D at 187-88.  He said

the flare gun expels a projectile by means of an explosive.  Ex. D at 190.

When he fired it, it operated consistent with that of a pistol that expels a

bullet.  Ex. D at 188, 190.

Whether, based on this and the other testimony presented, the flare

gun met the definition of a firearm as charged in the Amended Information

and as described in the jury instructions was a question for the jury.  *See*

State v. Ware, 253 So. 2d 145, 145 (Fla. 2d DCA 1971) (holding that the

question of whether the device met the definition of "firearm" in section

790.001(6) was a question for the jury); *see also* Emmons v. State, 546 So.

2d 69, 70-71 (Fla. 2d DCA 1989) (rejecting argument that device was not a

firearm based on authority from other jurisdictions because "[t]he testimony

at the appellant's trial squarely puts his flare gun into this category [of the

statutory definition of "firearm"] because it is designed to and was actually

capable of expelling a projective by means of an explosive device as its

test firing showed.").

Petitioner has not demonstrated that the post-conviction court unreasonably determined that counsel was not deficient in failing to request a reading of the entire definition of "firearm" and in failing to request an instruction on the definition of "destructive device."  Accordingly, Petitioner has failed to meet the requirements of 28 U.S.C. § 2254(d).  Habeas relief on this ground should be denied.

## Ground 3: Failure to Raise Verdict Error on Appeal

Petitioner contends that he was denied effective assistance of appellate counsel when his attorney failed to argue on appeal the trial court's denial of a "deadly weapon" alternative to "firearm" on the aggravated assault verdict form, which he contends, denied him due process and the possibility of a jury pardon.  ECF No. 13 at 9; ECF No. 14 at 13.  He argues that "aggravated assault with a deadly weapon" is a "one-step removed lesser-included offense of Aggravated Assault with a Firearm."  ECF No. 14 at 23.  He also argues here that nowhere on the verdict form was a provision made for the jury to find him guilty only of aggravated assault without the enhancement for a firearm provided in section 775.087(2), Florida Statutes.  He claims this omission prejudiced him because the appellate court would have reversed based on the confusing jury verdict form omitting a lesser included offense.

A similar claim was raised in Petitioner's petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in the state First District Court of Appeal.  Ex. L at 8-10.  In that petition, he argued that the verdict form was incorrect, and that appellate counsel should have raised the issue because it did not provide an alternative verdict of aggravated assault with a deadly weapon, which he characterized as a lesser included offense of aggravated assault with a firearm.  Ex. L at 8.  The petition was denied on the merits without explanation.  Ex. Q.

Petitioner appears to refer to the interchange that occurred at trial, after the jury was instructed, when trial counsel asked the court to amend the verdict form.  Ex. E at 391-92; 399.  Trial counsel's objection to the verdict form was stated to the judge as follows:

> MR. THOMAS [defense counsel]:  . . . .  This doesn't have the charge, if you find that he committed - - that he did not use a firearm, that is aggravated assault.
>
> THE COURT:  The aggravated assault is up here.
>
> MR. THOMAS:  Right.
>
> THE COURT:  If they find that, then they have to answer two questions.
>
> MR. THOMAS:  Right.  But under the jury instructions, if you find that a firearm was not used, then that is aggravated assault.
>
> THE COURT:  Right.
>
> MR. THOMAS:  Then that should be on there.  That's a lesser included.  I mean, I don't want it delayed any more than

we have to, but I just think that that - - that's the jury instruction. Isn't that right?

    . . . .

    THE COURT:  All right. I'm going to leave it as it is because it does say guilty of aggravated assault, and that is the charge.  If they find that, then they have to answer the other two questions.  If the answer is no, they've already found the guilty of aggravated assault charge.

    MR. THOMAS:  So you understand that that's the next lowest one that you're not allowing? I just want to make it clear for the record.

    THE COURT:  Well, it is being allowed on there.  What we're saying is - -

    MR. THOMAS:  See - - I'm sorry.  But they don't know - - they're finding him guilty of something.  That's why they have it in the jury instruction.  If you find the defendant did not use a firearm, then you should find him guilty of aggravated assault.

    MR. SIMON [prosecutor]:  That's what that is.

    MR. THOMAS:  But that's not saying that.  That's confusing, I'm saying, to the jury.  I'm just objecting based on that.  I think you ought to add that line.

Ex. E at 391-393.  Further discussion ensued a short time later and the trial

judge made the following explanation:

    THE COURT:  Count 2 says guilty of aggravated assault by threat.  It doesn't say guilty of aggravated assault by threat with a firearm, as it's charged in the information.

    MR. THOMAS:  Right.  Right.

    THE COURT:  It just says guilty of aggravated assault by threat.  If they check that box, then they have to answer two questions:  Do you find that during the course of the aggravated assault by threat, the defendant used, carried, and actually possessed a firearm?  Yes or no.  Then, do you find that during the course of the aggravated assault by threat, the defendant

actually discharged a firearm?  Yes or no.  You are asking for me to just put in a line that says, if you find the defendant did not use - -

MR. THOMAS:  A firearm.

THE COURT:  - -  carry, actually possess or discharge a firearm - -

MR. THOMAS:  Right.

THE COURT:  - - then - -

MR. THOMAS:  They can find him guilty of aggravated assault.

. . . .

MR. THOMAS:  . . . .  So the verdict is aggravated assault with a firearm, yes or no.  Then the next one would be if you find that he's - - you know, he committed aggravated assault but did not use a firearm, you should find him guilty of aggravated assault.

. . . .

MR. THOMAS:  . . . .  I want - - what I'm asking is that the first line should read guilty of aggravated assault.  Next one, the next line, should be the questions about the firearm.  Then the next line after that, if you find that he committed aggravated assault but did not use a firearm, guilty of just plain aggravated assault, so that they know there is another option, that they could find him guilty of an aggravated assault where it's clear that it's not a firearm or anything like that.  That's all.

THE COURT:  What is the State's position?

MR. SIMON: Judge, it says guilty of aggravated assault, and the firearm is the enhancement.  The jury has to find on aggravated assault that he used a deadly weapon along with the other ones.  So if they check guilty of aggravated assault, then they go down:  Okay.  Here's the enhancement.  Did he use a firearm?  Did he discharge a firearm?  If they say no, it's guilty of aggravated assault with a deadly weapon, which is what they checked in the first place. . . . .

MR. THOMAS:  Where do they know they can find him guilty of aggravated assault with a deadly weapon?

> THE COURT:  Well, it says guilty of aggravated assault by threat.
>
> MR. THOMAS:  That doesn't say anything about deadly weapon.
>
> MR. SIMON:  The elements, Judge, and that's where you go back to it.  That's why we give them the elements.

Ex. E at 395-399.  The trial court denied the request to amend the verdict form, concluding that it would be more confusing with the revisions requested by counsel.  Ex. E at 400.

Petitioner was charged with Count 2 in the Amended Information, alleging that he

> . . . did unlawfully and with a deadly weapon, to-wit: a flare gun without intent to kill, intentionally make an unlawful threat, by word or act, to do violence to the person of SUSAN ELIZABETH LANGSTON and while having the ability to do so, did do an act, to-wit: firing a flare gun at a vehicle occupied by Susan Elizabeth Langston and/or D.E.L., which created a well-founded fear that such violence was imminent, and during the commission thereof actually possessed a firearm, to wit: flare gun, and further in commission thereof discharged said firearm, in violation of sections 784.021(1)(a) and 775.087(2), Florida Statutes.

Ex. A at 3 (emphases omitted).  Section 784.021(1)(a), Florida Statutes (2008), with which Petitioner was charged, provides that an "aggravated assault" is an assault "with a deadly weapon" without intent to kill by

intentional unlawful threat.[7]  Thus, "deadly weapon" is inherent in and an element of the base charge in this case of aggravated assault.

"Aggravated assault with a deadly weapon" is not a lesser included offense of aggravated assault enhanced by use of a firearm.

The verdict form as it pertained to Count 2 in this case stated:

### Verdict

WE, THE JURY, find as follows as to the counts charged in the Information:

. . . .

### COUNT 2

\_\_\_\_\_ Guilty of Aggravated Assault by Threat.

If you find the defendant guilty of Aggravated Assault by Threat, please answer the following questions:

Do you find that during the course of the Aggravated Assault by Threat the defendant used, carried or actually possessed a firearm?

\_\_\_\_\_ Yes              \_\_\_\_\_ No

Do you find that during the course of the Aggravated Assault by Threat the defendant actually discharged a firearm?

\_\_\_\_\_ Guilty of Improper Exhibition of a Weapon, a lesser included offense.

\_\_\_\_\_ Guilty of Assault, a lesser included offense.

\_\_\_\_\_ Not guilty.

SO SAY WE ALL, this the 28th day of May, 2008.

---

[7] Simple "assault" is defined in pertinent part in section 784.011, Florida Statutes (2008), as an intentional, unlawful threat by word or act to do violence to the person of another.  The jury was instructed as to this definition.  Ex. E at 380.  Under section 784.021(1)(a), a simple assault becomes an "aggravated" one with the addition of a deadly weapon.  The jury was also instructed with this element.  Ex. E at 380.  Use of a firearm during an aggravated assault is an enhancement for sentencing purposes.

Ex. C at 447.  The jury found Petitioner guilty of aggravated assault by threat.  That is the base charge of aggravated assault even though it did not mention "deadly weapon."  That language did appear in Count 2 and did appear in the jury instructions given to the jury.[8]  The jury then went on to find that Petitioner was guilty of aggravated assault, that he did use, carry or actually possess a firearm, and that he did actually discharge the firearm.

At trial, defense counsel was requesting primarily that, after the findings concerning a firearm, the verdict should reiterate that if the jury finds he did not use a firearm, they should find him guilty only of aggravated assault.  As the trial judge explained, that finding was already on the verdict form, at the beginning, and did not need to be repeated at the end.  If the jury found Petitioner guilty of aggravated assault but also found he did not use a firearm, the jury would indicate by checking "No"

---

[8] The court instructed the jury that the elements of aggravated assault were: "One, Gregory James Pappas intentionally and unlawfully threatened by word or act, to do violence to Susan Elizabeth Langston; two, at the time, Gregory James Pappas appeared to have the ability to carry out the threat; third, the act of Gregory James Pappas created in the mind of Susan Elizabeth Langston a well-founded fear that the violence was about to take place; four, the assault was made with a deadly weapon.  A weapon is deadly if it is used or threatened to be used in a way likely to produce death or great bodily harm. . . .  If you find that the defendant committed aggravated assault and you also find that during the commission of the crime, the defendant used a firearm, you should find him guilty of aggravated assault with a firearm. . . .  If you find only the defendant committed aggravated assault but did not possess a firearm, then you should find him guilty only of aggravated assault.  Ex. E at 380-81.

next to the questions asking about a firearm.  The end result of such a

finding would be that Petitioner was convicted of the base offense of

aggravated assault without any enhancement for the firearm.  Repetition of

the option to find the Petitioner guilty of aggravated assault was not

necessary and, as the trial judge indicated, would have been more

confusing.  The jury was properly instructed, and was told, "If you find only

the defendant committed aggravated assault but did not possess a firearm,

then you should find him guilty only of aggravated assault." Ex. E at 381.

This provided the guidance Petitioner was seeking, and the verdict form

allowed the jury to make that decision by checking the "No" lines if they

found no firearm was involved.

Moreover, Petitioner was incorrect in characterizing "aggravated

assault with a deadly weapon" as a lesser included offense of "aggravated

assault with a firearm."  The Florida Standard Jury Instruction for

Aggravated Assault under section 784.021, Florida Statutes, lists as lesser

included offenses: Improper exhibition of a dangerous weapon or firearm;

Assault; Attempt, and Discharging firearms in public.  *See* Fla. Std. Jury

Instr. 8.2 (Crim.) Aggravated Assault.  Therefore, in light of the actual

charge of aggravated assault, the jury was correctly instructed.  Moreover,

the jury form correctly reflected the options available to the jury, including

the option of finding Petitioner guilty of aggravated battery without the finding of use of a firearm.  Ex. C at 447.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland."  Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  To succeed in a claim of ineffective assistance of appellate counsel, the Petitioner must show a "serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and . . . [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result."  Shoenwetter v. State, 46 So. 3d 535, 563 (Fla. 2010) (quoting Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986)).  If the legal issue would in all probability have been found to be without merit, the failure of appellate counsel to raise it will not render counsel's performance ineffective.  Shoenwetter, 46 So. 3d at 563.  This inquiry requires the court to consider the merits of the omitted claim, because Petitioner must show that there is a reasonable probability of success on appeal.  *See* Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991).  Further, appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal.  Smith v. Robbins, 528 U.S. 259, 288 (2000).  "[T]he practice of 'winnowing out' weaker arguments on

appeal, so to focus on those grounds that are more likely to prevail, is the 'hallmark of effective appellate advocacy.' " Hargrove v. Solomon, 227 F. App'x 806, 808 (11th Cir. 2007) (unpublished opinion) (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983))).

The state district court of appeal denied this claim on the merits without explanation.  Ex. Q.  The Eleventh Circuit has reiterated the deference owed to the state courts' adjudication in a § 2254 petition:

> "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Overstreet, 811 F.3d at 1287 (quotation marks omitted) (quoting Richter, 562 U.S. at 105).  Under § 2254, we must evaluate the highest state-court decision that evaluated the claim "on the merits."  28 U.S.C. § 2254(d); Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008).  Here, that is the DCA's per curiam affirmance of the Rule 3.850 trial court's denial of the Rule 3.850 motion.  See Pinholster, 563 U.S. at 187-88; Richter, 562 U.S. at 98.  Because the DCA did not give reasons for its summary affirmance, if there was any reasonable basis for the state court to deny relief, we are bound to affirm the denial of the petition.  Pinholster, 563 U.S. at 187-88; Richter, 562 U.S. at 98.

Marshall v. Sec'y, Florida Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).  Because the verdict form was proper, there was a reasonable basis for the state court to have concluded that Petitioner did not demonstrate ineffective assistance of appellate counsel.

Even if appellate counsel should have raised this claim as a non-frivolous issue preserved by trial counsel, the alleged error would likely have been found harmless beyond a reasonable doubt based on the evidence in the case.  Evidence was presented that the flare gun at issue met, in all respects, the pertinent portion of the definition for "firearm" in section 790.001(6), Florida Statutes.  The jury found that the flare gun was a "firearm" and that Petitioner actually discharged it.  All these circumstances provide a reasonable basis for the state court to deny Petitioner's claim that trial counsel was ineffective and that, but for counsel's alleged error, the appeal would have been successful.  For these reasons, Petitioner has not demonstrated that the state court's adjudication of this claim was contrary to or an unreasonable application of federal law.

Therefore, Petitioner has failed to demonstrate entitlement to relief under § 2254 and Ground 3 should be denied.

## Ground 4: Failure to Raise Exclusion of Expert Opinion on Appeal

Petitioner next contends that he was denied effective assistance of appellate counsel when counsel failed to argue as error the trial court's refusal to allow his expert to testify that a flare is not an "explosive" or "firearm" under Federal law.  ECF No. 13 at 10; ECF No. 14 at 16.  At trial, Petitioner called Warren Parker, who was allowed to testify as an expert on

explosives.  Ex. E at 240.  He testified without objection that a "flare launcher" such as the one involved in this case was larger than a standard pistol and is orange in color, and that in his opinion the flare launcher in this case was not a firearm under the Florida statutory definition.  Ex. E at 242-43.

When Parker began to distinguish the primer mixture in a flare cartridge from that in a standard shotgun shell, he attempted to testify that under federal standards, the mixture was not classified as an explosive. Ex. E at 244.  The trial court sustained the State's objection to Parker testifying to what Federal law provides regarding flare devices.[9]  *Id.* Defense counsel argued that because Parker was testifying as an expert, the facts and data relied on did not have to be admissible.  Ex. E at 248. This argument was unsuccessful, but Parker was able to testify without objection that a firearm uses an explosive to expel a projectile and that a flare "uses totally different compounds that are not classified as explosives."  Ex. E at 262.  He also testified without objection that a flare has only "a few grains of an explosive" in the flare cartridge which does not

---

[9] The State raised this issue first in a motion in limine prior to trial.  Ex. C at 400.  The trial court granted the motion, excluding any testimony from Parker regarding regulations of the Bureau of Alcohol, Tobacco, and Firearms or the Coast Guard regarding whether a flare gun constitutes a firearm.  Ex. C at 463.

burn as fast and "doesn't produce propulsion," as compared to the explosive material used in a typical firearm.  Ex. E at 263.  He testified that what comes out of a flare cannot harm anyone at seven to ten feet away, although he later agreed that the flare burns at a high temperature.  Ex. E at 264, 279.  He testified again that in a flare launcher, no explosive force is used and that under Florida law, a flare launcher is not a firearm.  Ex. E at 264-65.

On cross-examination, Parker agreed that the flare launcher has a hammer, trigger, barrel, and breech just like a pistol.  Ex. E at 267.  He agreed the flare cartridge has a primer and black powder, which is a chemical compound that is ignited by heat and flame, and he agreed that under Florida law, an explosive is a chemical compound yielding to combustion by application of heat, flame, or shock.  Ex. E at 268-69.  He denied that the black powder in a flare launcher expels a projectile, but that it provides "some gases" that launch the flare.  Ex. E at 270-71.  The primer creates a spark.  Ex. E at 275.  Parker agreed that "[t]he cylinder is the flare" and that it comes out of the flare gun and is "consumed" as it flies through the air.  Ex. E at 284-85.  In answering a question on cross-examination, Parker also made reference to the flare launcher being

exempted under federal law.  No objection or motion to strike was made.
Ex. E at 271.

Petitioner contends that appellate counsel should have argued on appeal that Parker, as an expert, should have been allowed to testify that a flare launcher does not qualify as an explosive or firearm under federal law. ECF No. 14 at 16-17.  This claim was raised in the petition for writ of habeas corpus filed in the state First District Court of Appeal in which he contended that appellate counsel was ineffective for failing to make this argument.  Ex. L.  The appellate court affirmed on the merits.  Ex. Q.

Respondent contends that the trial court did not abuse its discretion in excluding testimony of federal law or regulations on the issue of whether a flare gun or flare launcher is considered to be a firearm because the issue before the trial court was whether it was a firearm under Florida law. ECF No. 25 at 40.  Accordingly, Respondent contends, appellate counsel cannot be deficient for failing to raise a meritless issue.  ECF No. 25 at 43.

As noted above, "[c]laims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland."  Philmore, 575 F.3d at 1264.  Appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal. Robbins, 528 U.S. at 288.  Petitioner must show that there is a reasonable

probability of success on appeal.  Heath, 941 F.2d at 1132.  Even if

appellate counsel had raised this issue, and even if the appellate court

were to find the trial court abused its discretion in prohibiting Parker from

testifying that under federal law a flare launcher is not a firearm, there is no

reasonable probability that the error would have been found reversible.

Parker was able, in spite of the limitation, to make reference to the flare

launcher being exempted under federal law.  No objection or motion to

strike was made.  Ex. E at 271.  Further, although his opinion was that

under Florida law, a flare launcher was not a firearm, in answers to specific

questions he did agree that the device launches a cartridge by use of

forces created by the combustion of a chemical compound referred to as

black powder, which is ignited in the process of firing the device.  He also

agreed that although a flare launcher was not designed to be a weapon,

Ex. E at 261, it could be used as a weapon.  Ex. E at 278.

Therefore, even if the appellate court were to find that Parker should

have been allowed to testify as an expert in more detail concerning the

federal classification of flare launchers, it is likely the court would have

found the limitation on Parker's testimony harmless in light of the totality of

his testimony and that of the State's witnesses concerning the design and

function of the flare gun.  The jury was instructed to determine if the flare

gun was a "firearm under the definition in section 790.001(6), as follows:

> (6)  "Firearm" means any weapon (including a starter gun)
> which will, is designed to, or may readily be converted to expel
> a projectile by the action of an explosive; . . .

§ 790.001(6), Fla. Stat. (2008).  The evidence met this definition provided

in Florida law.

When the district court of appeal does not give reasons for its

summary affirmance, "if there was any reasonable basis for the state court

to deny relief, [this Court is] bound to affirm the denial of the petition."

Marshall, 828 F.3d at 1285.  The state court's adjudication was not

unreasonable in light of Florida law and the evidence presented at trial.

There is no reasonable probability that, but for the alleged error of appellate

counsel in failing to appeal the limitation on Parker's testimony, the

appellate court would have reversed for a new trial.  "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."  Strickland, 466 U.S. at 694.  Moreover, the question before this

Court " 'is not whether a federal court believes the state court's

determination' under the Strickland standard 'was incorrect but whether

that determination was unreasonable—a substantially higher threshold.' "

Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  "And,

because the Strickland standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not

satisfied that standard." Mirzayance, 556 U.S. at 123.

Petitioner has failed to demonstrate that the state court's adjudication

resulted in a decision that was contrary to, or involving an unreasonable

application of, Strickland or any other federal law, as determined by the

Supreme Court. Nor has he demonstrated that that the adjudication turned

on unreasonable determination of the facts in light of the state court record.

Ground 4 should, therefore, be denied.

### Ground 5: Failure to Move to Suppress Contaminated Evidence

In Ground 5, Petitioner contends that trial counsel rendered

ineffective assistance by failing to move to suppress the "contaminated or

destroyed" exculpatory evidence consisting of the flare gun that Officer

Fortenberry discharged before placing into evidence.[10] ECF No. 13 at 12;

ECF No. 14 at 17. This claim was not raised in Petitioner's Rule 3.850

motion in the trial court. In his third amended petition in this Court, he

claims that he should be excused for failing to exhaust this claim based on

---

[10] Respondent's answer, ECF No. 25, did not address Ground 5.

<u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).  In <u>Martinez</u>, the Supreme Court

explained:

> [W]hen a State requires a prisoner to raise an ineffective-
> assistance-of-trial-counsel claim in a collateral proceeding, a
> prisoner may establish cause for a default of an ineffective-
> assistance claim in two circumstances.  The first is where the
> state courts did not appoint counsel in the initial-review
> collateral proceeding for a claim of ineffective assistance at
> trial.  The second is where appointed counsel in the initial-
> review collateral proceeding, where the claim should have been
> raised, was ineffective under the standards of <u>Strickland v.</u>
> <u>Washington</u>, 466 U.S. 668 (1984).  To overcome the default, a
> prisoner must also demonstrate that the underlying ineffective-
> assistance-of-trial-counsel claim is a substantial one, which is
> to say that the prisoner must demonstrate that the claim has
> some merit.

*Id.* at 14.

Thus, to overcome the procedural default under <u>Martinez</u>, Petitioner

must show that his appointed counsel in the initial review proceeding was

constitutionally ineffective and that the underlying post-conviction claim of

ineffective assistance of trial counsel is a substantial one that has some

merit.  "In order to establish prejudice to excuse a default, the petitioner

must show 'that there is at least a reasonable probability that the result of

the proceeding would have been different' absent the constitutional

violation."  <u>Raleigh v. Sec'y Fla. Dep't of Corr.</u>, 827 F.3d 938, 957 (11th Cir.

2016 (quoting <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003)).

"While defendants do not have a constitutional right to the effective

assistance of counsel on collateral review, ineffective assistance of counsel in an 'initial-review collateral proceeding' can constitute cause and prejudice to excuse a procedural default if the collateral proceeding was the first opportunity the defendant had to raise the procedurally defaulted claim." Raleigh, 827 F. 3d at 957 (citing Martinez, 566 U.S. at 13).

Petitioner gives no detailed information in the petition or memorandum of law as to why Martinez should apply to excuse the procedural default and allow this claim to be heard in federal court habeas proceedings. He does not allege that his collateral counsel was appointed. He does not allege that he asked counsel to file this claim in his initial post-conviction motion or in either of his two motions to file additional claims. He does not allege why counsel should have known to file this claim. As the Eleventh Circuit in Raleigh suggested, "collateral counsel could reasonably have chosen not to raise this claim." 827 F.3d at 958. For all these reasons, this Court cannot determine that collateral counsel was in fact deficient in failing to file this claim in the state court.

Even assuming *arguendo* that Petitioner satisfies these threshold requirements, Petitioner still must demonstrate under Martinez that the underlying ineffective assistance of trial counsel claim is substantial and has merit. Because Petitioner has failed to demonstrate that even if trial

counsel was deficient in failing to move to suppress the flare gun because it had been discharged after seizure, he has not shown that the prejudice prong of Strickland can be met.

Petitioner argues here that Officer Fortenberry seized a flare gun from his truck at the time of his arrest.  ECF No. 11-2 at 18.  He alleges that the flare gun was loaded and "it is inconceivable that Officer Fortenberry who has been a certified L.E.O. for six (6) years, and trained in firearms handling and safety would cock the hammer while attempting to unload the flare gun. . . .  Since the burnt gunpowder was lacking from the flare gun Fortenberry purposely fired the flare gun to produce the burnt gunpowder needed to establish that it was fired by Pappas."  *Id.* at 18.  He further alleged that he told his trial counsel that he never fired a flare gun and that "the flare device used by Pappas was a "Sky Blazer" flare stick (Stick Flare) which is similar to a roman candle (fireworks)."  *Id.*

Even though this claim was not raised by Petitioner in the post-conviction motion, certain testimony was presented at the evidentiary hearing that is relevant to this inquiry.  As he argues here, Petitioner testified at the evidentiary hearing that he did not use the flare gun taken from the vehicle, but used a flare stick.  Ex. T at 117.  His trial counsel testified at the evidentiary hearing that Petitioner admitted he fired the flare

gun. Ex. T at 142. Counsel also testified at the hearing that Petitioner told him "we could say it was a stick flare. And I didn't think that would fly that it was a stick flare because of the description given by Ms. Langston, I think her name was." Ex. T at 143. Counsel said he understood Petitioner to be wanting to say something that was not accurate; and he thought it was not a good idea to put Petitioner on the witness stand to testify to this, both because the victim had described the device as a flare gun and because counsel knew what Petitioner was saying was not accurate. *Id.* Trial counsel testified that Petitioner "indicated that he could testify that he had a stick flare and not a flare gun. In other words, it would be a lie." Ex. T at 158. If counsel had this same belief and knowledge prior to trial after conversations with his client, he could have made the strategic decision not to move to suppress the flare gun based on allegations that it had been discharged by Fortenberry on purpose because she knew she had seized the wrong flare device, as Petitioner now contends.

Moreover, there was no indication in the testimony that Officer Fortenberry discharged the flare gun on purpose to create powder residue. She testified at her deposition prior to trial that she took the flare gun to the police station and "when I was trying to disengage it, I shot it off. So there is the empty shell casing in there." Ex. V at 12. She further explained, "I

didn't want to put it in there loaded because God forbid somebody in property management handled it and it went off, like we do regular guns.  I was trying to unload it and the trigger went back and it popped into the ground."  Ex. V at 13.  She said, "Next time I'll make sure I get someone who has experience with flare guns" to disable it.  Ex. V at 17.

In light of Officer Fortenberry's deposition testimony, trial counsel would have been reasonable in concluding that a motion to suppress alleging that the officer fired the flare gun on purpose to create powder residue would not have been successful.  The jury also heard during Officer Fortenberry's trial testimony that the flare gun had been fired accidentally.  Ex. D at 158.  Moreover, even if the flare gun itself had been suppressed, there is no reasonable probability—measured in terms of undermining confidence in the verdict—that the jury would have acquitted him of the charge in light of the trial testimony of the victim that she saw Petitioner fire an orange flare gun out the window of his vehicle toward her car.

Because Petitioner has failed to demonstrate a reasonable probability that, but for trial counsel's alleged error, the result of the trial would have been different, the claim of a substantial ineffectiveness sufficient to justify excusing the procedural default under Martinez has not been shown.  Moreover, even if this claim is considered on the merits, it fails for the same

reasons that the procedural default cannot be excused. Petitioner cannot demonstrate a reasonable probability that, but for the alleged error of counsel in failing to move to suppress the flare gun, the result of the trial would have been different, a reasonable probability being one sufficient to undermine the Court's confidence in the outcome. For these reasons, habeas relief on ground 5 should be denied.

## Conclusion

Based on the foregoing, Petitioner Gregory Pappas, is not entitled to federal habeas relief. Accordingly, the third amended § 2254 petition (ECF No. 13) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the third amended § 2254 petition (ECF No. 13).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones, Secretary of the Department of Corrections, for Timothy H. Cannon as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on, March 21, 2017.


S/ Charles A. Stampelos
CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.